# EXHIBIT A

## TEAMING AGREEMENT

This agreement ("Agreement"), with an effective date of <u>December 11, 2009</u>, is by and between <u>Balfour Beatty·DPR·Big-D Design Builders, A Joint Venture</u> ("TEAM LEADER") and <u>Architectural Nexus, Inc.</u> ("TEAM MEMBER"), hereinafter also referred to collectively as "Parties" and individually as "Party."

In consideration of the mutual covenants and promises contained herein, the parties agree as follows:

## 1 PURPOSE OF TEAMING AGREEMENT

1.1 The purpose of this Agreement is to enter into a joint effort for the preparation and submission of a proposal or bid ("Proposal") to the United States Army Corps of Engineers ("Customer") in the interest of obtaining a prime contract to be awarded for the Customer's <u>Utah Data Center, Solicitation Number W912DR-09-S-0012</u> ("Project."). The Parties agree to cooperate fully towards obtaining the Prime Contract. Neither Party is precluded from independently submitting proposals or from performing work NOT related to or encompassed by this Agreement. In the event the Proposal is accepted by the Customer, TEAM LEADER will be the Prime Contractor and TEAM MEMBER will be a subcontractor.

## 2 RELATIONSHIP

2.1 TEAM MEMBER agrees to join TEAM LEADER's team ("TEAM") for the purpose described in paragraph 1.1. Nothing in this Teaming Agreement shall be deemed to constitute, create, give effect to, or otherwise recognize a joint venture, partnership, or other formal business entity of any kind between the Parties, and the rights and obligations of the Parties shall be limited to those expressly set forth herein. Nothing herein shall be construed as providing for the sharing of profits or losses arising out of the efforts of any or all of the Parties.

2.2 It is expressly agreed and understood that no Party will solicit personnel of the other Party associated with the work under this Teaming Agreement for the purpose of inducing them to join their employ during the course of this Teaming Agreement.

2.3 TEAM MEMBER agrees that its participation in pursuit of the Project is exclusive to the TEAM. TEAM MEMBER agrees not to engage in any agreement with another person, team or entity that would hinder or compete with TEAM LEADER's pursuit of an award for the Project by the Customer. The Parties will not actively participate in or knowingly support team efforts of other persons or entities that are competitive to this Teaming Agreement, nor compete independently for work covered by the Project throughout the duration of this Teaming Agreement. This term "actively participate," within the meaning of this paragraph, includes the interchange of technical or commercial data with competitors pertaining to the Project.

2.4 Under this Teaming Agreement, the Parties shall act as independent contractors and, unless both Parties consent in writing, neither Party shall act as agent for or partner of the other Party for any purpose whatsoever. The employees of one Party shall not be deemed the employees of the other, and such employees shall not be deemed commingled or subject to common management by either of the Parties.

2.5 Nothing in this Agreement shall grant either Party the right to make commitments of any kind for or on behalf of the other Party without prior written consent of the other Party.

2.6 In the event that this Teaming Agreement is terminated, both Parties shall be free to pursue any project individually or in joint venture with other firms.

## 3 TEAM MEMBER'S RESPONSIBILITIES

3.1 In assisting with Proposal development and Customer communications, TEAM MEMBER will provide its business management, financial and technical information, provide assistance and exert its best efforts on an exclusive basis for the preparation of the Proposal and pursuit of an award for the Project. TEAM MEMBER will designate a coordinator to facilitate communication and exchange of information and will provide qualified personnel to assist in the preparation of the Proposal documents. TEAM MEMBER will bear all its costs and expenses relating to or arising from the preparation of the Proposal(s). The TEAM MEMBER's anticipated scope of services is attached as Attachment A.

## 4 TEAM LEADER'S RESPONSIBILITIES

4.1 TEAM LEADER will have lead responsibility for preparation of the Proposal, for integration of the Parties' data, for submission of the Proposal to the Customer in a timely manner, and for negotiation of the Prime Contract. TEAM LEADER will direct and coordinate, to the fullest extent possible, the Proposal effort, Customer contacts and/or conferences, and marketing strategy. TEAM LEADER shall consult with TEAM MEMBER regarding Proposal content but in the event of a disagreement, TEAM LEADER will determine Proposal content.

## 5 PERFORMANCE

5.1 If TEAM LEADER is awarded a Prime Contract for the Project and such contract includes the work proposed by TEAM MEMBER, then following good faith negotiations of the applicable terms and conditions, which shall include as a minimum TEAM LEADER's standard terms and conditions and flowdown clauses from the Prime Contract, TEAM LEADER will award the TEAM MEMBER a subcontract for the agreed-upon work. The award of the subcontract is subject to the Customer's approval, if applicable.

5.2 In the event of a disagreement between the Parties regarding the TEAM MEMBER's scope of services, price, or other items, and in the event that such disagreement is not resolved through good faith negotiations within 30 days of award of the Prime Contract, then TEAM LEADER shall have the right, without prejudice or liability, to enter into an agreement with another party for the subcontract work.

## 6 PROPRIETARY INFORMATION

6.1 During the term of this Agreement, it may be necessary for either Party to disclose proprietary information to the other. All proprietary data must be in writing and clearly identified as "proprietary." Proprietary information furnished hereunder shall remain the property of the furnishing Party and shall be returned to such Party promptly upon request. Each Party agrees not to disclose the other Party's proprietary information to unauthorized parties. However, neither Party shall be liable for the inadvertent or accidental disclosure of such information if a disclosure occurs despite the exercise of the same precautions as the Party normally takes to safeguard its own proprietary information. The Parties' confidentiality obligations will not apply to information that: (i) is in the public domain; (ii) is known by a Party at the time of its receipt from the other Party; (iii) is developed independently by the receiving Party; or (iv) is received from others. The obligations of confidentiality do not apply to information required to

be publicly disclosed in defense of any claim against either Party. Neither Party shall use the other Party's proprietary information for any purpose other than as is required for the performance of this Agreement. However, without liability, the information may be disclosed to the Customer and used for Proposal preparation, evaluation, and negotiation. The obligation of the Parties under this: "Proprietary Information" provision will terminate 3 years from the effective date of this Agreement.

## 7 LEGAL EFFECT OF AGREEMENT

7.1 The Parties Agree that no legal relationship of any kind exists as a result of this Agreement, other than the covenants expressly contained herein. Neither Party shall have the authority to create any obligation for the other except to the extent stated herein. The Parties agree that this Agreement may be made known to the Customer.

## 8 TERMINATION OF THE AGREEMENT

8.1 This Agreement, except the provision on "Proprietary Information," shall expire 16 months from the date hereof unless terminated earlier by one of the following events: (i) the Customer cancels the procurement; (ii) the Customer awards the Prime Contract to someone other than TEAM LEADER; (iii) the Parties dissolve this Agreement by mutual consent; (iv) one of the Parties petitions for relief under bankruptcy laws, or makes an assignment for the benefit of creditors; or (v) one of the Parties notifies the other of a decision not to submit a proposal for the Project. This Agreement also may be terminated for other valid, compelling reason by either of the Parties including but not limited to debarment, suspension, or criminal investigation of a Party, change in legal status due to merger or sale of one of the entities or grossly unsatisfactory performance of a Party.

## 9 MISCELLANEOUS

9.1 Headings. The Article, Section and other headings contained in this Agreement are for reference purposes and shall not affect in any way the meaning or interpretation of this Agreement.

9.2 Governing Law. The validity, construction and performance of this Agreement and all disputes between the parties arising out of or relating to this Agreement shall be governed by the laws, without regard to the laws as to choice or conflict of laws, of the State of California.

9.3 Assignment. Neither this Agreement nor any rights under this Agreement may be assigned by any Party without the prior written consent of the other Party.

9.4 Binding Effect. The provisions of this Agreement shall bind and inure to the benefit of the Parties and their respective successors and permitted assigns.

9.5 Parties in Interest. Nothing in this Agreement, expressed or implied, is intended to confer on any person or entity other than the Parties any right or remedy under or by reason of this Agreement.

9.6 Notices. Any notice or communication required or permitted by this Agreement shall be deemed sufficiently given if in writing and when delivered personally or 48 hours after deposit with the U.S. Postal Service as registered or certified mail, postage prepaid, and addressed as follows:

If to:   TEAM LEADER
         9635 Maroon Circle, Suite 410
         Englewood, CO 80112
         Attention: Michael W. Devens

or

If to:   TEAM MEMBER
         Architectural Nexus
         2150 South 1300 East, Suite 200
         Salt Lake City, Utah 84106
         Tel. 801.924.5000
         Attention: Douglas A. Thimm, Principal

or to such other address as the Party to whom notice is to be given has furnished to the other Party in the manner provided above.

9.7 Amendment and Waiver. This Agreement may be amended, modified or supplemented only by a writing executed by each of the Parties. Any Party may in writing waive any provisions of this Agreement to the extent such provision is for the benefit of the waiving Party. No action taken pursuant to this Agreement, including any investigation by or on behalf of any Party, shall be deemed to constitute a waiver by that Party or its or any other Party's compliance with any representations or warranties or with any provisions of this Agreement. No waiver by any Party of a breach of any provision of this Agreement shall be construed as a waiver of any subsequent or different breach, and no forbearance by a Party to seek a remedy for noncompliance or breach by another Party shall be construed as a waiver of any right or remedy with respect to such noncompliance or breach.

9.8 Venue, Jurisdiction and Process. The Parties agree that any suit, action or proceeding arising out of this Agreement or related to but not covered by this Agreement, or the interpretation, performance or breach of this Agreement, shall be instituted in the United States District Court or any court of the State of California located in San Mateo County, and each Party irrevocably submits to the jurisdiction of those courts and waives any and all objections to jurisdiction or venue that it may have under the laws of the State of California or otherwise in those courts in any such suit, action or proceeding. Each Party agrees to accept service of process in any such action, suit or proceeding in the manner provided in Section 9.6 Notices.

9.9 Severability. The invalidity or unenforceability of any particular provision of this Agreement shall not affect the other provisions, and this Agreement shall be construed in all respects as if any invalid or unenforceable provision were omitted.

9.10 Publicity. No publicity or advertising relating to this Agreement shall be released by either Party without the other Party's prior written approval.

9.11 Entire Agreement. This Agreement, including the Exhibits and Schedules, embody the entire agreement and understanding between the Parties pertaining to the subject matter of this Agreement, and supersede all prior agreements, understandings, negotiations, representations and discussions, whether verbal or written, of the Parties, pertaining to that subject matter.

## 10 ATTACHMENTS

10.1 The following attachments are incorporated herein, as though fully set forth in this Agreement.

Attachment A: TEAM MEMBER will be included as a Teaming Partner for the contract. It will not be necessary to compete TEAM MEMBER against other Team Partners or other subcontractors. However, TEAM LEADER has an affirmative responsibility to determine that TEAM MEMBER'S proposed price is fair and reasonable. The contemplated scope of services is provided as Attachment A hereto.

IN WITNESS WHEREOF, the Parties hereto have executed this Teaming Agreement effective as of the date indicated on the first page.

Architectural Nexus, Inc.

_____
Signature

Mark A. Davis, Principal
Name (Printed or Typed)

Dec. 18, 2009
Date

Balfour Beatty•DPR•Big-D Design Builders, A Joint Venture

_____
Signature

Michael W. Devens
Name (Printed or Typed)

12/18/09
Date

**Attachment A: Contemplated Scope of Services**

In addition to TEAM MEMBER'S responsibilities for proposal preparation assistance, based on TEAM MEMBER'S expertise, TEAM LEADER contemplates requesting performance by TEAM MEMBER of the following types of services and scopes of work:

TEAM MEMBER shall be a prime subcontractor to TEAM LEADER for performance of a portion of the architectural design work on the Project. TEAM MEMBER understands that the Project shall be completed on a Design-Build basis and that it shall be procured in two phases, requiring demonstration of qualifications for shortlisting in Phase 1, and design development and proposal of a firm, fixed price in Phase 2.

If the TEAM is down-selected by the Customer to proceed to Phase 2, TEAM MEMBER's scope of responsibilities shall include collaboration with TEAM LEADER and other TEAM MEMBERS during Phase 2 to assist with development of a design and Project budget and proposed price that TEAM LEADER deems is suitable for proposal to the Customer.

TEAM MEMBER understands and agrees that the TEAM includes other design, design-build, and/or design-assist team member(s) who shall perform other portions of the design work on the Project. TEAM MEMBER agrees to work cooperatively with such other team member(s) to advance the best interests of the TEAM and the Project.

TEAM MEMBER understands that the Customer has very high goals for employment of small and disadvantaged businesses. TEAM LEADER is committed to a genuine program of small and disadvantaged business utilization that meets or exceeds the Customer's goals and ensures successful performance by such businesses, and TEAM MEMBER agrees to cooperate with TEAM LEADER in support of its commitment and achievement of its goals.